William C. YOUNG;  et al.,
Plaintiffs—Appellees,

v.

Scott J. HAMILTON, individually,
et al, Defendants,

and

Clarence W. Winning, M.D., individually dba JWL Money Mastry,
Defendant—Appellant.

William C. Young;  et al.,
Plaintiffs—Appellees,

v.

Scott J. Hamilton;  et al., Defendants,

and

JV Ventures, L.C., aka/JV Ventures,
L.C.;  et al., Defendants—
Appellants.

Nos. 01–56557, 01–56573.
D.C. No. CV–97–01962–RMB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 2003.

Decided Oct. 31, 2003.

---

Stanley F. Zubel, Esq., Law Offices of Stanley F. Zubel, San Diego, CA, for Plaintiffs–Appellees.

Roger Sandberg Hanson, Law Offices of Roger S. Hanson, Santa Ana, CA, for Defendants–Appellants.

Tracy Thu-Truc Nguyen, Esq., Santa Ana, CA, Fredric Louis Diamond, Richard A. Higgins, San Diego, CA, for Defendants.

Before FISHER and BYBEE, Circuit Judges, and MAHAN, District Judge.*

* The Honorable James C. Mahan, United States District Judge for the District of Nevada, sit-

MEMORANDUM **

William and Sandra Young and Justin McNamara invested funds in what they thought was a riskless high-yield investment program operated by JV Ventures (JVV), a Utah limited liability company managed by Alan Williams. Williams arranged for a man named Scott Hamilton to handle the investment. Instead, Hamilton (with the involvement of others, including a man named Clarence Winning) wired the money to a third party in England. Unable to recover anything, the Youngs and McNamara brought suit in the Southern District of California against JVV, Williams, and other alleged facilitators of the unauthorized transfer, including Winning. The complaint alleged violations of the civil provisions of RICO and California law (breach of contract, fraud and deceit, and related claims). After a bench trial, the district court concluded that the "investment program" was a fraud and that Williams, JVV, Winning, and other defendants were liable under RICO and on many of the state law claims. Williams, JVV, and Winning appeal.

Williams contends that the district court erred in holding him liable under civil RICO. A violation of the relevant provision, 18 U.S.C. § 1962(c),[1] requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted). A pattern of racketeering activity requires at least two predicate acts within a ten-year period. *See* 18 U.S.C. § 1961(5).[2]

■ Williams's only argument against liability under § 1962(c) is that all his actions were part of a single fraudulent scheme, and that under *Superior Oil v. Fulmer*, 785 F.2d 252 (8th Cir.1986), and *Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985), predicate acts that are part of a single fraudulent scheme do not establish a pattern of racketeering activity. This court, however, has rejected that interpretation of RICO's pattern requirement. *See United Energy Owners Committee, Inc. v. U.S. Energy Management Systems, Inc.*, 837 F.2d 356, 360–61 (9th Cir.1988). Shortly afterward the Supreme Court rejected it as well. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 234–43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir.1995) (citing *H.J.*, 492 U.S. at 240, 243, 109 S.Ct. 2893). We therefore uphold the district court's conclusion that Williams violated RICO. Williams does not contest the imposition of vicarious liability on JVV for his actions, so the court's conclusion that JVV violated RICO stands as well.

As to the plaintiffs' California law claims, the court held Williams and JVV liable on the claims for fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and common

---

ting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c).

2. Section 1961(5) states that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

count. Williams appeals on the ground that other defendants (Hamilton and Matz) carried out the unauthorized transfer of the funds to England. He claims that their actions relieve him of liability.

It is true that in California the defendant in a tort action is not liable if there is a superseding cause that breaks the chain of causation between the defendant's act and the injury. *See, e.g., Powell v. Standard Brands Paint Co.,* 166 Cal.App.3d 357, 212 Cal.Rptr. 395, 398 (1985). Whether an intervening event is a superseding cause generally depends on whether the intervening event and the resulting injury were reasonably foreseeable. *See id.; Arreola v. County of Monterey,* 99 Cal. App.4th 722, 122 Cal.Rptr.2d 38, 68 (2002); RESTATEMENT (SECOND) OF TORTS § 442 (1965). Similarly, in a breach of contract action, the plaintiff must prove that the damages from the breach were reasonably foreseeable. *See Wynn v. Monterey Club,* 111 Cal.App.3d 789, 168 Cal.Rptr. 878, 882–83 (1980).

■ Williams's liability, however, is entirely consistent with these principles. Williams and Hamilton had worked together on unsuccessful investment programs before the program in question, but Williams contracted with Hamilton to carry out the program anyway. In light of the previous "investment" failures, Hamilton and Matz's loss of the money was well within the foreseeable consequences of Williams's misrepresentations to the plaintiffs. The district court's analysis therefore stands regardless whether Williams had any knowledge of or control over the actual unauthorized transfer.

■ Williams's final argument is that Utah limited liability company law shields him from personal liability because he

dealt with the plaintiffs on behalf of JVV rather than in his personal capacity. The Utah Revised Limited Liability Company Act provides that, with certain exceptions not relevant here, no manager of a limited liability company is personally liable for a liability of the company or for the acts of the company or of any other manager of the company. *See* UTAH CODE ANN. § 48–2c–601. But Williams offers no explanation how he can invoke Utah law in a suit in federal court in California. Even if Utah law does apply under California choice of law rules, the Utah courts have imposed personal tort liability on corporate directors and officers for fraudulent acts committed in furtherance of corporate business. *See Armed Forces Ins. Exch. v. Harrison,* 70 P.3d 35, 41 (Utah 2003); *cf. Norman v. Murray First Thrift & Loan Co.,* 596 P.2d 1028, 1030 (Utah 1979); *Reedeker v. Salisbury,* 952 P.2d 577, 582 (Utah App.1998). Here, since Williams used JVV to commit fraud, Utah law does not protect Williams from personal liability for his actions on behalf of the company.

■ Like Williams, Winning disputes his liability under both RICO and California law. The district court held Winning liable for conspiring to violate RICO, which is unlawful under 18 U.S.C. § 1962(d).[3] Winning's principal argument against RICO liability–that he committed no predicate acts–is ineffective. Section 1962(d) forbids the mere agreement to violate RICO. It does not require that the defendant actually have committed predicate acts. *Cf. Oki Semiconductor Co. v. Wells Fargo Bank,* 298 F.3d 768, 774–75 (9th Cir.2002). Winning's other arguments against RICO liability also rest on incorrect statements of § 1962(d)'s requirements.

---

**3.** "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

Regarding the California law claims, the district court concluded that Winning had entered into a civil conspiracy with Chambers, Hamilton, and Matz to perpetrate the improper transfer. The court then held Winning liable on various claims on which it had already held Hamilton and Matz liable: fraud and deceit (in the alternative, negligent misrepresentation), breach of contract, breach of the implied covenant of good faith and fair dealing, and common count.

Winning's first contention–that he did not personally commit actions justifying liability on those claims–does not undermine the district court's analysis. The court did not hold Winning liable on the theory that he himself had committed the violations, but on the theory that he had conspired with those who had. Winning's second argument is against this coconspirator liability. He claims that his actions did not satisfy all the elements of civil conspiracy, and that there was insufficient evidence that he joined a conspiracy.

Civil conspiracy is "not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 457 (1994). The elements of civil conspiracy are the formation and operation of the conspiracy, a wrongful act done pursuant to the conspiracy, and damage resulting to the plaintiff from the act. *See id.* A defendant's concurrence in the conspiracy may be established by circumstantial evidence. *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 157 Cal.Rptr. 392, 598 P.2d 45, 52 (1979).

All the elements of civil conspiracy were present in Winning's case. The court found by a preponderance of the evidence that Winning, Chambers, Hamilton, and Matz agreed to divert the Youngs' and McNamara's funds from Matz's account to England (causing the loss of the funds). The court also found that Winning helped direct the diversion.

There was sufficient evidence to support these findings. Winning testified that he received payments totaling $42,000 from Hamilton and Chambers' attorney within two weeks after the transfer of the funds. He claimed that these were returns on an investment with Chambers, but the court reasonably discredited his explanation of the payments. The evidence also included an August 4, 1996, account of the transfer prepared by Winning, which confirms that he brought Hamilton and Chambers together. Given this evidence, the district court did not err in concluding that Winning joined the conspiracy.

■ At oral argument, however, plaintiffs' counsel conceded that under California law, civil coconspirator liability extends only to torts committed by coconspirators, not to contractual wrongs. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 457–58 (1994); *cf. Beck v. Prupis*, 529 U.S. 494, 501–06, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000). In light of this principle, the district court correctly imposed liability on Winning for the fraud committed by Hamilton and Matz; but the court erred in holding Winning liable on the breach of contract, breach of the implied covenant of good faith and fair dealing, and common count claims.

Nevertheless we need not reverse. The district court awarded the Youngs total damages of $100,000 (the amount of money they lost) on their fraud and contract claims. Similarly, the court awarded McNamara $150,000 (the amount of money he lost) on his fraud and contract claims.

Even if we were to reverse the court's judgment on the contract claims, therefore, Winning would remain liable for the same amount of damages on the fraud claims. The error was harmless. *See* Fed. R. Civ. P. 61.

Winning's remaining arguments require only brief discussion. The first–that the court erred in partially denying and partially taking under submission the motion for judgment on partial findings that he made at the close of the plaintiffs' case–does not square with the language of the governing rule, Fed. R. Civ. P. 52(c). The rule states that, on receipt of a motion for judgment on partial findings, the court "may enter judgment as a matter of law" immediately, or the court "may decline to render any judgment until the close of all the evidence."[4] Here, the court chose not to enter judgment in Winning's favor immediately, but instead to hear further evidence before deciding the motion. This was well within its discretion under the rule. Winning's other contention–that his codefendant Matz did not file a cross-claim, so that the district court erred in included Matz among the defendants in calculating indemnity and contribution percentages–is incorrect. Matz filed a cross-claim on March 20, 1998.

AFFIRMED.

---

**4.** The relevant part of the rule states: "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence." Fed. R. Civ. P. 52(c).