LEE, P.J.,
 

 for the Court.
 

 FACTS
 

 ¶ 1. In 1999, Jerry Paepke negotiated for an option to purchase real property in Chickasaw County from his long-time friend, Mabel Leathers, one of six heirs to the Wheeler estate. The Wheeler estate owned 511 acres on the north side of Highway 41 and 134 acres on the south side of Highway 41. Paepke believed he could resell the property for a profit, but he was not financially able to purchase the land on his own. Paepke asked another friend, Travis Davis, to purchase the land and split the profits with him when the land was resold. The Wheelers quoted Paepke a price of $450 an acre for the north 511 acres and $350 an acre for the south 134 acres. Paepke contacted Davis’s attorney to draft purchase options to be executed by each of the six Wheeler heirs. The purchase options showed Paepke as the purchaser of the land.
 

 ¶ 2. On September 9, 1999, Paepke and the Wheeler heirs met at Davis’s attorney’s office. Davis’s attorney presented Paepke with a typed partnership agreement. The agreement was drafted by Davis’s attorney.
 
 [1]
 
 It stated:
 

 Dear Jerry:
 

 This confirms our understanding concerning my purchase on September 9, 1999 of the Wheeler property located Northwest of Okolona. You helped me
 
 *134
 
 acquire this property through negotiations with the Wheeler family.
 

 If the property is sold, I will divide equally with you the profit. The profit is the sale price less the price I paid for the property and my expenses.
 

 I anticipate selling the property North of Highway 41 in the near future. I will not sell it for an unreasonably low price and will tell you what the offer is. You or your designee may meet the offer within ten days and if you do not I am free to sell it for the offer. The proceeds from the sale will be first applied to reimburse me for my investment and the expenses of the sale and then any remainder divided equally with you.
 

 If I do not sell the property South of Highway 41,1 will convey to you or your designee a one-half undivided interest in it provided that all of my investment and expenses have been paid for all of the property.
 

 If you agree this is our understanding, please sign a copy of this letter.
 

 Davis’s and Paepke’s signatures appear at the bottom of the letter. Paepke testified that after he signed the agreement, he and the Wheeler heirs were instructed to go to another law office where the closing took place. According to Paepke, he was not advised until the closing that the land would be placed in Davis’s name only or that the closing would take place at another location.
 

 ¶ 3. Davis purchased the property for $276,850 and sold it for $484,025, realizing a profit of $157,175. The north section of the property was sold in December 1999 for $340,025. Two-thirds of the south section of the property was sold in March 2000 for approximately $60,000. The remaining one-third of the south section of the property was sold in 2003 for approximately $30,000. Davis did not notify Paepke of the offers on the property and did not give him the ten-day option on the property as per them agreement. Davis also refused to split the profits of the sale with Paepke.
 

 ¶ 4. Davis admits he did not comply with any of the terms of the agreement. Davis argues that he did not have the agreement drafted or agree to its terms, despite the letter being on what appeared to be his letterhead and his signature being at the bottom of the document. He testified that he did not see the document until Paepke brought it to his office and asked him to sign it. Davis testified that he looked at the document, saw Paepke’s name, and signed it, but he did not read it.
 

 ¶ 5. Davis contends that the terms he agreed to were handwritten by him on a sheet of yellow legal pad paper, which he no longer had. He testified that the handwritten agreement basically stated that Paepke had a buyer who would buy the land for $1,000 an acre within thirty days. Davis testified that he gave Paepke sixty days to sell the land, but no buyer was found. Davis sold the land on his own and refused to split the profits with Paepke because Paepke did not provide a buyer. Paepke denied that he told Davis there was a secured buyer for the property, but Paepke admitted he told Davis that “the Mossy Oak people were paying up to $1,000.00 an acre on some good hunting groundfs].”
 

 ¶ 6. Paepke testified that he made improvements to the property, such as repairs to the houses located on the property, dozier work, and repairing road and fire lanes. Davis denied that Paepke had made any improvements to the property. Davis paid Paepke $2,500 and promised to pay him more at a later date. Davis testified that he did not pay Paepke any additional money because he did not believe it was owed and because Paepke began making threats to physically harm him.
 

 
 *135
 
 PROCEDURAL HISTORY
 

 ¶ 7. Paepke filed a complaint against Davis in the Chickasaw County Circuit Court alleging breach of contract, unjust enrichment, and imposition of a constructive trust. Davis answered the complaint and filed a counterclaim, which asserted fraud in the inducement and intentional infliction of emotional distress.
 

 ¶ 8. A three-day jury trial was held in the Chickasaw County Circuit Court. At the close of testimony, the trial court instructed the jury that the September 9 agreement was a valid and enforceable contract which limited the jury to finding what, if any, damages were owed to each party. The jury returned a verdict for Paepke in the amount of $72,954.30. The jury found no damages in Davis’s counter-suit against Paepke. The trial court subsequently entered a judgment in favor of Paepke for $72,954.30 plus post-judgment interest at the rate of eight percent per annum and dismissed Davis’s counterclaim with prejudice. Davis filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which was denied by the trial court.
 

 ¶ 9. Davis now appeals, asserting the following issues: (1) the trial court erred in instructing the jury that the instrument was a valid contract; (2) even if the instrument was a valid contract, Paepke acted as a real estate broker in violation of the Real Estate Brokers License Law thus making the contract unenforceable; (3) the trial court erred in dismissing Davis’s counterclaim and defense of fraudulent inducement; (4) the trial court improperly excluded evidence of Davis’s costs incurred during the sale of the land; and (5) reversal or a new trial is required since the jury verdict was based on the trial court’s erroneous findings of fact and conclusions of law. Paepke cross-appeals, asserting that the trial court erred in failing to award him prejudgment interest. Finding no error, we affirm.
 

 DISCUSSION
 

 I. DID THE TRIAL COURT ERR IN FINDING THAT THE AGREEMENT BETWEEN THE PARTIES WAS A VALID CONTRACT?
 

 ¶ 10. Davis asserts that the September 9, 1999, document was not a valid contract because it lacked adequate consideration; thus, the trial court committed reversible error in giving peremptory instruction C-5, which instructed the jury to consider the document valid and enforceable.
 

 ¶ 11. This Court reviews a trial court’s decision to give a peremptory instruction the same as a motion for a directed verdict.
 
 Windmon v. Marshall,
 
 926 So.2d 867, 872(¶20) (Miss.2006). The grant or denial of a peremptory instruction or a directed verdict is reviewed de novo.
 
 Id.
 
 “If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.”
 
 Id.
 
 (quoting
 
 Entergy
 
 Miss.,
 
 Inc. v. Bolden,
 
 854 So.2d 1051, 1055(¶ 7) (Miss.2003)). However, “[o]ur rules and case law allow for questions to be removed from the jury’s consideration when there exists no factual question for it to resolve.”
 
 Entergy Miss.,
 
 854 So.2d at 1055(¶ 8).
 

 ¶ 12. After hearing the testimony, the trial judge determined sua sponte that the agreement was a valid contract and that the jury would be instructed as such. The trial judge gave the following reasons for his finding:
 

 Mr. Davis is a well-known, respected businessman. He has businesses, various businesses; and the lawyers know and understand that when the parties negotiate, those prior negotiations and contemporaneous negotiations are
 
 *136
 
 merged into a contract. It’s not vague, and it is complete on its face.
 

 I don’t know of any contract that could be plainer or clearer than the contract between the parties. The contract was prepared by, admittedly by Mr. Davis’[s] attorney.... So the contract is to be more strictly construed against the party that drew the contract, so the Court has no other alternative but to find that this was a binding, legal contract between the parties.
 

 ¶ 13. One of the six elements of a valid contract is consideration.
 
 Rotenbenry v. Hooker,
 
 864 So.2d 266, 270(¶ 13) (Miss.2003). Consideration is defined as: “(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise.”
 
 Marshall Durbin Food Corp. v. Baker,
 
 909 So.2d 1267, 1273(¶ 14) (Miss.Ct.App.2005) (quoting
 
 City of Starkville v. 4-County Elec. Power Ass’n,
 
 819 So.2d 1216, 1220(¶ 10) (Miss.2002)). “All that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the prom-issor or a detriment to the promisee. If either of these requirements exist, there is a sufficient consideration.”
 
 Theobald v. Nosser,
 
 752 So.2d 1036, 1040(¶ 15) (Miss. 1999) (quoting
 
 American Olean Tile Co. v. Morton,
 
 247 Miss. 886, 893, 157 So.2d 788, 790 (1963)).
 

 ¶ 14. Davis argues that the agreement is not a valid contract because it only contains past consideration.
 
 Marshall Durbin Food Corp.,
 
 909 So.2d at 1276(¶22) (“In most situations, past consideration may not serve as consideration.”). Davis cites to the sentence in the agreement that states, “You
 
 helped
 
 me acquire this property through negotiations with the Wheeler family.” (Emphasis added). We find that even though the negotiations were in the past, Paepke continued to suffer a legal detriment by allowing Davis to benefit from his option to purchase the land. Paepke continued to be restricted by this after the partnership agreement. Paepke also made, or attempted to make, improvements to the property and continued to attempt to find a buyer. We find that sufficient consideration existed to support the contract.
 

 ¶ 15. In finding that this argument is without merit, we also find that Davis’s argument that the trial court improperly denied proposed jury instructions D-7 and D-8 is without merit. Proposed jury instruction D-7 instructed the jury of the elements of a valid contract. Proposed jury instruction D-8 gave the jury the definition of consideration and instructed the jury that past consideration is insufficient to support a contract. These instructions were unnecessary as the only issue for the jury to resolve regarding the contract was that of damages.
 

 II. DID PAEPKE ACT AS A REAL ESTATE BROKER IN VIOLATION OF THE REAL ESTATE BROKERS LICENSE LAW?
 

 ¶ 16. Davis next argues that even if the agreement is found to be a valid contract, Paepke illegally acted as a real estate broker; thus, the contract is unenforceable. Davis filed a motion for summary judgment on this issue, which was denied. He argues that the trial court committed reversible error in denying his motion for summary judgment, and at the least, the jury should have been instructed to consider his defense that the contract may have been illegal.
 

 1. Did the trial court err in denying Davis’s motion for summary judg
 
 ment?
 

 ¶ 17. This Court employs a de novo standard of review of a lower court’s grant
 
 *137
 
 or denial of a motion for summary judgment.
 
 Pratt v. City of Greenville,
 
 918 So.2d 81, 82(¶ 4) (Miss.Ct.App.2006). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “The evidence must be viewed in the light most favorable to the party against whom the motion has been made,” and the moving party bears the burden of demonstrating that no genuine issue of fact exists.
 
 Pratt,
 
 918 So.2d at 82-83(¶ 4). If there is no genuine issue of material fact, then the moving party is entitled to a judgment as a matter of law.
 
 Id.
 
 at 83(¶ 4).
 

 ¶ 18. The law regarding the licen-sure of real estate agents, Mississippi Code Annotated section 73-35-1 (Rev. 2008), states that it is unlawful for a person to act as a real estate broker in this state without first obtaining the appropriate license. A real estate broker includes:
 

 all persons, partnerships, associations and corporations, foreign and domestic, who for a fee, commission or other valuable consideration, or who with the intention or expectation of receiving or collecting the same, list, sell, purchase, exchange, rent, lease, manage or auction any real estate, or the improvements thereon, including options; or who negotiate or attempt to negotiate any such activity; or who advertise or hold themselves out as engaged in such activities; or who direct or assist in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction. The term “real estate broker” shall also include any person, partnership, association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary or upon fee, commission or otherwise, to sell such real estate, or parts thereof, in lots or other parcels, including timesharing and condominiums, and who shall sell, exchange or lease, or offer or attempt or agree to negotiate the sale, exchange or lease of, any such lot or parcel of real estate.
 

 Miss.Code Ann. § 73-35-3(1) (Rev.2008).
 

 ¶ 19. We cannot find that Paepke acted as a real estate broker. The contract signed by the parties did not require Paepke to make any efforts to sell or market the property, and Paepke did not receive or request a fee for negotiating the options. According to the contract, Davis was to divide the profits from the sale of the land equally with Paepke if the land sold. In the event that the property or a portion of it did not sell, Davis was to deed a one-half interest in the property to Paepke. We find that Paepke’s actions concerning the agreement with Davis was that of a business deal rather than the actions of a real estate broker.
 

 2. Did the trial court err in excluding the testimony of Roberi Prather regarding real estate law?
 

 ¶ 20. Davis notified Paepke on Friday, March 30, 2007, that Robert Prather, Executive Director of the Mississippi Real Estate Commission, might be called as a witness. Trial was scheduled to begin the following Monday, April 2, 2007. The notice designating Prather was filed on the day of trial. During pretrial motions, Paepke objected to Prather being called as a witness. The trial court excluded Prather as a witness because of the late designation. Davis argues that the trial court’s exclusion of Prather’s testimony severely prejudiced his defense of illegality of the contract based on the Real Estate
 
 *138
 
 Brokers License Law and affected his substantial right to a fair trial. Also, Davis argues that Paepke would have suffered no prejudice if Prather were allowed to testify as Paepke’s counsel could have interviewed Prather prior to his testimony.
 

 ¶ 21. “The standard of review for the admission or exclusion of evidence is abuse of discretion.”
 
 Univ. of Miss. Med. Ctr. v. Pounders,
 
 970 So.2d 141, 145(¶ 13) (Miss. 2007). In excluding Prather’s testimony, the trial court stated:
 

 The Court finds that the addition of Robert Prather as a prospective witness comes too late because he should have been named earlier if the defendant intended to use Mr. Prather. The notice was filed today, the date of trial. It was faxed to the defendant on ... March 30th, if I understand it, and three days before the trial; and the Court’s of the opinion that it would be unfair to allow Robert Prather to testify on such short notice; and I will sustain the motion in limine in that regard.
 

 This matter was filed, this case was filed in 2000; and the Court’s of the opinion that the designation of Mr. Prather would come far too late....
 

 Davis’s counsel offered no explanation for the designation of Prather on the first day of trial, which had been set six months earlier. We cannot find that the trial court abused its discretion in granting Paepke’s motion to exclude Prather’s testimony.
 

 ¶ 22. Having found that this issue is without merit, we also find that Davis’s argument that the trial court committed reversible error in denying jury instructions D-9 through D-17 is without merit. These instructions were unnecessary as they instructed the jury on real estate licensing law, and no testimony was presented to the jury regarding this issue.
 

 III. DID THE TRIAL COURT ERR IN DISMISSING DAVIS’S COUNTERCLAIM AND DEFENSE OF FRAUDULENT INDUCEMENT?
 

 ¶ 23. Davis asserts that Paepke induced him into purchasing the Wheeler property by fraudulently representing that he had a buyer in place who would purchase the north side of the property for $1,000 an acre within thirty days of Davis’s purchase. He argues that the trial court erred in refusing to consider parol evidence that Paepke fraudulently induced him into entering the contract and in rejecting his proposed jury instructions on this issue.
 

 ¶ 24. “Fraud in the inducement arises when a party to a contract makes a fraudulent misrepresentation,
 
 ie.,
 
 by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract.”
 
 Lacy v. Morrison,
 
 906 So.2d 126, 129(116) (Miss.Ct. App.2004). “Parol evidence is admissible to show that the making of a written contract was procured by fraudulent representations. Evidence of this kind does not vary the written contract; it destroys and avoids it.”
 
 Turner v. Terry,
 
 799 So.2d 25, 33-34(¶ 25) (Miss.2001) (quoting
 
 Nash Miss. Valley Motor Co. v. Childress,
 
 156 Miss. 157, 162, 125 So. 708, 709 (1930)).
 

 ¶ 25. Davis contends that he would not have purchased the property had he known that Paepke did not have a secured buyer in place to purchase the land for $1,000 an acre. He and another witness, Frank Holliday, testified at trial to hearing Paepke say that he had a buyer in place to purchase the property for $1,000 an acre. Paepke denied that he represented to Davis that a secured buyer was in place. However, Paepke admitted he told Davis that “the Mossy Oak people were paying up to $1,000.00 an acre on
 
 *139
 
 some good hunting ground[s].” We cannot find that Davis was fraudulently induced by Paepke’s speculation that Mossy Oak was buying property in the area.
 

 ¶ 26. In addition, the agreement, which was drafted by Davis’s attorney, contains no indication that the parties contemplated that a secured buyer was in place. The language of the agreement makes statements such as: “If the property is sold, I will divide equally with you the profit”; “I will not sell [the property north of Highway 41] for an unreasonably low price and will tell you what the offer is”; and “If I do not sell the property South of Highway 41, I will convey to you or your designee a one-half undivided interest in it provided that all of my investment and expenses have been paid for all the property.” If Davis felt the purchase of the property was based on Paepke’s statements regarding a potential buyer, it seems that Davis would have instructed his attorney to include that information in the agreement. At one point in the testimony, Davis asserts that he did not read the agreement before signing it. As for that argument, it is well established that “a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract.”
 
 Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.,
 
 584 So.2d 1254, 1257 (Miss. 1991).
 

 ¶ 27. If it was truly Davis’s understanding that a secured buyer was in place, Davis could have seen from a plain reading of the contract that the terms of the document he signed contradict this understanding. Further, as the trial court noted, Davis was a well-known and respected businessman who negotiated and entered into contracts on a regular basis, and Paepke was not an experienced businessman.
 

 ¶ 28. We find that this issue is without merit. In so finding, we also find that Davis’s argument regarding the refused jury instructions on fraudulent inducement is without merit.
 

 IV. DID THE TRIAL COURT IMPROPERLY EXCLUDE EVIDENCE OF DAVIS’S COSTS INCURRED DURING THE SALE OF THE LAND?
 

 ¶ 29. Davis argues that the trial court committed reversible error in not allowing his testimony concerning expenses he incurred making repairs to and selling the property. The trial court found that evidence of Davis’s expenses should be excluded because of Davis’s lengthy delay in responding to discovery requests on this issue. The jury was allowed to consider the interest on the loans taken out by Davis to procure the property.
 

 ¶ 30. In January 2001, Davis answered the first set of interrogatories and requests for production of documents. Interrogatory numbers nine and ten asked for “a detailed account of each transaction concerning the initial purchase and subsequent sale” of the real property and “a detailed accounting of all monies expended [ Qincluding the initial purchase price plus all expenses and interest) ... for the initial purchase.” Davis responded that information relating to documents, persons, and expenses involved in the sale of the property and improvements on the property were “highly privileged and personal,” and he would not respond without a confidentiality order.
 

 ¶ 31. The case laid dormant for some time, and in January 2005, Paepke’s counsel requested Davis to supplement his answer. Davis did not respond. Again on April 1, 2005, July 15, 2005, and January 25, 2006, Paepke’s counsel requested that
 
 *140
 
 Davis supplement his answer, and Davis did not respond. On March 3, 2006, Paepke’s counsel filed a motion to compel discovery. Six days before trial, on March 26, 2007, Davis filed his supplemental response to Paepke’s first set of interrogatories and requests for production of documents. Davis answered that he expended $42,500 on the property and was attempting to find receipts on the expenditures and would produce them when available.
 

 ¶ 32. The trial court found that disclosing these expenditures six days prior to trial did not give Paepke the opportunity to investigate the accuracy of the alleged expenses and that allowing evidence of the expenses would be unfair. We review the admission or exclusion of evidence for abuse of discretion.
 
 Pounders,
 
 970 So.2d at 145(1113). We cannot find that the trial court abused its discretion in excluding testimony regarding Davis’s expenses. This litigation had been ongoing for six years prior to trial, and the parties knew of the trial setting six months in advance. No reason was given for the delay except for Davis’s assertion that he had just located his bank records. Therefore, we find that this issue is without merit.
 

 V. WAS REVERSAL OR A NEW TRIAL WARRANTED?
 

 ¶ 33. In this section of his brief, Davis reasserts all his prior arguments and argues that numerous errors at trial require reversal. Having found no reversible error, we find that this issue is without merit and affirm the judgment in favor of Paepke, including the award of post-judgment interest.
 

 Cross-appeal
 

 ¶ 34. Paepke cross-appeals asserting that the trial court should have awarded him prejudgment interest. In its ruling on this motion, the trial court stated, “Since the Court sanctioned the Defendant (Davis) for failure to timely answer discovery request, the Court declines to assess pre-judgment interest against Defendant and therefore overrules Plaintiffs motion for same.”
 

 ¶ 35. Our standard of review of an award of prejudgment interest is abuse of discretion.
 
 Warwick v. Matheney,
 
 603 So.2d 330, 342 (Miss.1992). We cannot find that the trial court abused its discretion in denying prejudgment interest. This case was filed by Paepke on September 26, 2000. Some discovery was taken, but then the case lay dormant for nearly four years. The case was dismissed as stale on January 31, 2005. It was reactivated by Paepke on March 15, 2005. Trial was finally held on April 2, 2007. We find that both parties are to blame for the delays in moving forward with this case. Paepke, as the plaintiff, had a responsibility to prosecute his case and move it forward. Therefore, we affirm the trial court’s denial of prejudgment interest.
 

 ¶ 36. However, because this case was filed before January 1, 2003, Mississippi Code Annotated section 11-3-23 (repealed) is applicable. Although this section was repealed by the Legislature in 2002, the savings clause provides that causes of action which were filed in a trial court before January 1, 2003, are still subject to section 11-3-23. Miss.Code. Ann. § 11-3-23 (Rev.2002);
 
 AirTran, Inc. v. Byrd,
 
 987 So.2d 905, 908(¶ 8) (Miss.2007). Prior to being repealed, section 11-3-23 provided:
 

 In case the judgment or decree of the court below be affirmed, or the appellant fails to prosecute his appeal to effect, the Supreme Court shall render judgment against the appellant for damages, at the rate of fifteen percent (15%), as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum....
 

 
 *141
 
 Since the judgment of the court below was affirmed and this case was filed before January 1, 2003, we render judgment against Davis for damages in the amount of fifteen percent of the $72,954.30 judgment against him.
 

 ¶ 37. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT AND CROSS-APPEAL. THE APPELLANT IS ASSESSED DAMAGES IN THE AMOUNT OF FIFTEEN PERCENT ON THE JUDGMENT OF $72,954.30. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND APPELLEE/CROSS-APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ, CONCUR.
 

 [1]
 

 . Davis testified that his attorney did not draft the document, but rather Paepke had it prepared. However, Davis's former attorney, the Honorable Kenneth Burns, admitted through deposition testimony that he drafted the document.